1

**CLARKSON LAW FIRM, P.C.**

2
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*

3
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*

4
Bryan P. Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*

5
22525 Pacific Coast Highway

6
Malibu, CA 90265
Tel: (213) 788-4050

7
Fax: (231) 788-4070

8
*Counsel for Plaintiff and the Proposed Classes*

9

## UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11

12
CHAKA THEUS, individually, and on behalf of
all others similarly situated,

13

Plaintiff,

14

vs.

15

16
OTTER.AI, INC.

17

Defendant.

18

19

20

21

22

23

24

25

26

27

28

Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Chaka Theus ("Plaintiff"), individually and on behalf of all others similarly situated brings this action against Defendant Otter.ai, Inc. ("Defendant" or "OtterAI").

Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth, after a reasonable opportunity for discovery.

## **INTRODUCTION**

1.      OtterAI is a rapidly growing technology company, offering a transcription and productivity platform that integrates with various widely used professional communication services, including Zoom, Google, and Microsoft Teams. With over 25 million global users and over a billion meetings world-wide captured, it's one of the most commonly used virtual note-takers.

2.      Publicly, OtterAI promises privacy. It says it "recognize[s] your conversations may contain some of your most sensitive and confidential information" and "believe[s] transparency is important to all meeting participants," and "[t]hat's why we are committed to keeping your information private and secure."[1] Behind these promises, OtterAi spies. It slips surreptitiously into meetings as a silent participant. It records audio. It can take screenshots of conversations, along with audio recordings, and stores everything without the participants' knowledge or consent.

3.      OtterAI's surreptitious surveillance extends far beyond its own user base. When a user connects their calendar, OtterAI silently auto-joins every meeting, and begins recording and transcribing the conversation, as well as screenshots. No one gets asked or warned of what OtterAI does. Most participants never know. They only learn later, when partial transcripts or screenshots appear in their inbox – in an email after the meeting is concluded.

4.      The OtterAI bot hides in plain sight, often indistinguishable from a real person in the

---

[1] *Privacy & Security*, OTTER.AI (2025), https://otter.ai/privacy-security.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

room. It appears as the user's note-taker, for instance, "Anna's Notetaker (Otter.ai)," and provides no visual or auditory notice to other meeting participants that the meeting is being recorded in real time, transcribed, and stored on OtterAI's servers for future use.

5.     Unlike Zoom's or Microsoft Teams' built-in recording features, which prominently announce that a recording is underway, automatically put all participants on mute and turn off their cameras until the participants agree to a recording, OtterAI evades any such disclosures including even a simple audio and/or visual warning in the chat that it is about to begin recording all participants. As a result, OtterAI captures hundreds of thousands if not millions of participants without their informed consent. Confidential work meetings, recruiting interviews, legal strategy sessions, medical appointments, support groups, religious meetings – OtterAI records them all.

6.     Participants expect confidentiality, and instead, they are secretly recorded. OtterAI records and scoops up information about every attendee in the virtual room – most of whom have never agreed to its terms, including Plaintiff and other Class Members, who were not even aware of OtterAI, what it does, and how it operates.

7.     OtterAI also collects names, emails, and contact details from platforms like Zoom, Teams, Google calendar, and Outlook calendar, and links those details with the recorded transcripts, capable of identifying specific speakers to specific words at specific times.

8.     Only after a call ends, attendees are sent an email with partial notes and even screenshots, but they still cannot see the full recording (or discover they had been recorded) until they activate an OtterAI account. Even if they do so and discover – to their horror – that their voices, faces, and private conversations have been captured and stored – it is too late because the conversation has been recorded, and sent to all invitees, regardless of whether they had attended or participated in the meeting.

9.     OtterAI also capitalizes on the data it collects. It uses the harvested information to then send unsolicited promotional emails to non-users, trying to lure them into joining its platform.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

10.    Plaintiff and millions of others never expected a silent AI bot in their meetings, who would record their entire conversation, take screenshots, and collect data about them to store indefinitely (collectively "Private Information"). Their private conversations were secretly harvested, stored indefinitely, and used for OtterAI's commercial gain.

11.    OtterAI's actions—conducted without user consent and for its own financial benefit—resulted in severe privacy violations for millions of individuals, including Plaintiff, across the United States.

12.    Plaintiff, on behalf of herself and a class of similarly situated individuals, seeks to hold OtterAI accountable for these unlawful practices under statutory and common law.

## PARTIES

13.    Plaintiff Chaka Theus is a natural person and citizen of California, currently residing in Los Angeles County, California.

14.    Defendant Otter.AI, Inc. is a global technology company that provides AI-powered meeting transcription, voice recording, and productivity software for independent professionals and businesses. However, unlike a microphone, tape recorder, or other neutral instruments that only records at a user's direction, OtterAI independently joins meetings, records conversations, transcribes them in real time, stores the resulting data indefinitely, and even uses the collected information for its own marketing and commercial purposes.

15.    OtterAI is incorporated in Delaware with its principal place of business located at 800 W. El Camino Real, Suite 170, Mountain View, California 94040.

## JURISDICTION

16.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred (100) putative class members defined below, and minimal diversity exists because at least one Plaintiff is a citizen of a state different from the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

citizenship of Defendant. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

17.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this District.

## **VENUE**

18.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events or omissions giving rise to the claims occurred in this district – this is where Defendant's principal place of business is located and conducts substantial business. OtterAI's conduct, including its unlawful recording and data collection of millions of nationwide users as described here, was occurring in this District.

## **FACTUAL BACKGROUND**

19.    In the wake of the COVID-19 pandemic, the American workplace underwent a profound transformation. What originally began as a temporary public health measure, has now evolved into a permanent shift: millions of professionals now work entirely online.

20.    By 2023, over 35% of full-time employees in the U.S. regularly worked remotely, and an even greater percentage participated in hybrid work environments.[2] Meetings, once conducted face-to-face in conference rooms and coffee shops, are now hosted via Zoom, Microsoft Teams, Google Meet, and other video conferencing platforms.

21.    Daily calendars of employees (whether they work remotely or in person) are now filled with back-to-back virtual meetings – performance evaluations, sensitive discussions with Human Resources, brainstorming sessions with colleagues, legal strategy conferences with legal professionals or private mediations; confidential discussions with clients; therapy, mental health,

---

[2] Diccon Hyatt, *Remote Work Is Here To Stay, New Data Shows*, INVESTOPEDIA (June 28, 2024), https://www.investopedia.com/remote-work-is-here-to-stay-new-data-shows-8671287.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

and doctors' appointments; sessions with tax professionals; and more.

22.    The average professional attends eight meetings per week remotely. The Harvard Business Review found that there were 60% more remote meetings per employee in 2022 as compared to 2020.[3]

23.    Even courts continue to hold hearings online for convenience of the parties, and the public, while strictly prohibiting recording the courtroom proceedings.

24.    With each virtual invite accepted, participants assume they are joining a private conversation among their peers or other professionals, free from surreptitiously monitoring and recording absent disclosure and their consent.

25.    To ensure participants' privacy, Microsoft Teams, Zoom, and other platforms with the technical capacity to record meetings now automatically mute all participants and turn off their cameras *before* a recording is activated. Every participant must willingly consent to participating in a recorded proceeding by affirmatively clicking a button authorizing a recording, and then they are able to turn their cameras on and unmute themselves. But this is not the case when OtterAI enters a meeting as a silent participant. OtterAI does not announce what it does, does not seek consent, and begins recording without making any visual, audio, or a transcribed disclosure to let all participants know that it has begun recording the conversation.

26.    OtterAI is a global technology company that offers a software platform designed to record, transcribe, and analyze spoken conversations, including virtual meetings, calls, and webinars.

27.    OtterAI advertises its services as a "productivity tool" for professionals and has processed over 1 billion meetings for over 25 million global users, ranging from individuals to

---

[3] Andrew Brodsky and Mike Tolliver, *No, Remote Employees Aren't Becoming Less Engaged*, HARVARD BUSINESS REVIEW (Dec. 6, 2022), https://hbr.org/2022/12/no-remote-employees-arent-becoming-less-engaged?ab=hero-subleft-2.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

startups and Fortune 500 companies.[4] However, OtterAI is not just a passive tool/software, in reality it's an active participant that secretly joins the calls, to then intercept, possess, and exploit communications of all participants, often without knowledge of the users themselves – to later use the gathered data for its own commercial purposes.

28.    OtterAI markets itself as the "leading AI meeting agent," and is backed by high-profile early investors such as Google, DeepMind, Zoom, and Tesla.[5]

29.    OtterAI uses advanced generative AI technology to provide real-time notes, voice-activated agents that actively participate in meetings, summaries, action items, customized insights, and other meeting content. OtterAI states that these features help users be more productive and collaborate more effectively with their teams.

30.    OtterAI enables users to record and transcribe live meetings—whether conducted in person, over the phone, or via video—without automatically notifying or obtaining the consent of all participants in the meeting. OtterAI transmits its live recordings in real time to its servers and stores them on its own servers for later commercial use – including training of its

31.    OtterAI's default functionality relies on the company's "Otter Assistant" feature, which automatically joins virtual meetings via Zoom, Google Meet, Microsoft Teams, and other platforms by syncing with a user's calendar.

32.    According to OtterAI's own documentation, this feature is enabled by default, so that Otter Assistant will "automatically join your Zoom, Google Meet, and Microsoft Teams meetings through your synced calendar events to provide a meeting transcription in real-time."[6]

---

[4] Otter, *Otter.ai Breaks $100M ARR Barrier and Transforms Business Meetings Launching Industry-First AI Meeting Agent Suite*, OTTER.AI (March 25, 2025), https://otter.ai/blog/otter-ai-breaks-100m-arr-barrier-and-transforms-business-meetings-launching-industry-first-ai-meeting-agent-suite.

[5] *Id*.

[6] Otter Help, *Stop Otter Notetaker from automatically joining your meetings*, OTTER.AI (July 2025), https://help.otter.ai/hc/en-us/articles/12906714508823-Stop-Otter-Notetaker-from-automatically-joining-your-meetings.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

33.     Similarly, Otter Assistant automatically sends live transcripts and summaries to the meeting recipients by default.[7]

34.     Thus, the Otter Assistant automatically joins meetings and sends transcripts to the meeting participants unless the user takes affirmative steps to prevent it from doing so, although, even then, many users have reported that OtterAI continued to join the meetings despite the users' attempt to disable this feature in their settings.[8] [9]

35.     Because these settings are automatically enabled, the OtterAI user is frequently unaware that the Otter Assistant is transcribing and sending their call data until such data has already been shared.

36.     Most users with Otter Assistant are unaware that they even enabled the feature in the first place.

37.     Around February 2023, OtterAI originally introduced the feature with a pop-up setup page, which prompted users to enable "Otter Assistant," that would automatically take notes for any Zoom, Meet, or Teams Meeting on the user's calendar.

38.     The pop-up setup page included a toggle that was set to automatically share meeting notes with the attendees listed in the calendar event.

39.     Many users clicked on "Enable Otter Assistant," without realizing that they had given permission to OtterAI to attend all of their meetings (even when users are not present), record the entire meeting, and share transcribed meeting notes with non-user attendees (regardless of their

---

[7] Otter Help, *Turn off auto-share for conversations & meetings*, OTTER.AI (July 2025), https://help.otter.ai/hc/en-us/articles/14952683922711-Turn-off-auto-share-for-conversations-meetings.
[8] *arcticfox*, *Tell HN: Otter.ai bot recording meetings without consent*, HACKER NEWS (Sept/ 7, 2022), https://news.ycombinator.com/item?id=32751071.
[9] u/MattAdmin444, Post titled *Removing Otter.ai*, REDDIT (Dec. 2024), https://www.reddit.com/r/k12sysadmin/comments/1hggr8b/removing_Otter.ai/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

attendance).[10]

40.    Automatically enabling this feature for all users, and without individual consent, was disastrous for many users. One humiliated OtterAI user publicly posted on Reddit that OtterAI had automatically joined a job interview without their knowledge or permission. During the interview, an interviewer questioned whether the meeting was being recorded, prompting the user to assure everyone it was not. The user was mortified to later discover that OtterAI had in fact recorded and transcribed the meeting, with the notes distributed to all participants. The user wrote: "Otter AI is seriously intrusive and I have no idea who now has access to a private meeting that I ensured (sic) all was NOT being recorded… This company Otter AI should be sued for the intrusive and devious nature it presents as well as privacy and security risks." The user concluded, "Needless to say – I will not get this job because Otter AI made me look like a liar and a fool! Unbelievable!"[11] (*See* Image 1, below).

**Image 1.**






Specialist-Maize-957 · 22d ago · Edited 22d ago

I am so upset - yesterday I was in an interview, and one of the interviewers asked me if it was being recorded (apparently, Otter AI had joined without my permission or knowledge)! To my horror, I found out only after, that I believe it was indeed recorded- and sent out to me and all the interviewers! Otter AI is seriously intrusive and I have no idea who now has access to a private meeting that I ensured all was NOT being recorded. This company Otter AI should be sued for the intrusive and devious nature it presents as well as privacy and security risks. If some idiot uses Otter AI- (like was done to me in the recent weeks before this meeting), do not join the meeting, unless you want it spying on you and recording your every move and word- and everyone in the meeting with you! Needless to say- I will not get this job because Otter AI made me look like a liar and a fool! Unbelievable!

⬆ 2 ⬇    ○ Reply    Q Award    ↗ Share    …

---

[10] Barbara Krasnoff, *How to keep Otter from automatically recording your meetings*, OTTER.AI (April 13, 2023), https://www.theverge.com/23660324/otter-record-transcribe-how-to-stop.
[11] u/Specialist-Maize-957, Comment to *Do not join Otter.Ai unless you want your whole company spammed*, REDDIT (July 17, 2025), https://www.reddit.com/r/projectmanagement/comments/1j0cfei/do_not_join_Otter.ai_unless_you_want_your_whole/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

41.    In another instance, researcher and engineer Alex Bilzerian joined a Zoom meeting with a venture-capital firm and Otter.ai was used to record the call. After the meeting, OtterAI automatically emailed Bilzerian and other participants a transcript of the call, which included "hours of their private conversations afterward, where they discussed intimate, confidential details about their business." Bilzerian described that, after he had exited the call, investors discussed their firm's "strategic failures and cooked metrics." After notifying the investors that they had inadvertently shared confidential details about their firm, Bilzerian ultimately decided to terminate his potential deal with them.[12]

42.    Users have also reported that even after noticing and attempting to disable this feature, OtterAI's notetaker bot continued to join meetings without any further action by the user, and often without their knowledge. This has resulted in OtterAI repeatedly appearing in private meetings, even after users have attempted to disable it.

43.    An OtterAI user posted online that they "carefully opted out of" an OtterAI update that would enable OtterAI to automatically join their meetings through their Google Calendar. Yet, they explained, "the bot proceeded to join two confidential meetings on my behalf and record the whole thing, then email every member an absurd, inaccurate 'outline' after." The user was extremely frustrated and felt "completely abused." They warned fellow users that they "opened a support ticket with screenshots [with OtterAI]," but, according to Twitter, OtterAI was neglecting to review any tickets from free users.[13] (*See* Image 2 below).

---

[12] Brooke Kato, *AI is spying on your workplace gossip and secrets — and sharing them afterward,* NEW YORK POST (Oct. 4, 2024), https://nypost.com/2024/10/04/tech/ai-is-spying-on-your-workplace-gossip-and-secrets-and-sharing-them-afterward/.

[13] *arcticfox*, *Tell HN: Otter.ai bot recording meetings without consent*, HACKER NEWS (Sept. 7, 2022), https://news.ycombinator.com/item?id=32751071.

9

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

**Image 2.**



> ▲ **Tell HN: Otter.ai bot recording meetings without consent**
> 612 points by arcticfox on Sept 7, 2022 | hide | past | favorite | 176 comments
>
> I occasionally use Otter.ai to transcribe when I'm multitasking. Recently they made an update, which I carefully opted out of, to automatically join every meeting through my Google Calendar and transcribe it. Screenshots prove I had the feature disabled.
>
> The bot proceeded to join two confidential meetings on my behalf and record the whole thing, then email every member an absurd, inaccurate "outline" after.
>
> I am not much of a privacy person but I feel completely abused in this situation. I have opened a support ticket with screenshots but there is no response, and according to Twitter they are essentially not reviewing tickets from free users at the moment.
>
> So just a heads-up to the HN community!
>
> Are there other, more privacy oriented transcription services anyone can recommend?

44.    When Otter Assistant joins a call, it does not provide reliable or automatic visual or auditory alerts to non-OtterAI-user participants that a meeting is being recorded or transcribed, unlike Zoom or Microsoft teams, which prominently notify all participants and provide a choice to remain in or exit the meeting.

45.    When an Otter Assistant user joins a meeting, the application enters the meeting as a silent participant and immediately begins recording audio, transcribing contents in real time while sending and storing the recordings and captured data in real time to its servers. OtterAI does not obtain consent from non-subscriber attendees, nor do most attendees have any knowledge that the Otter Assistant is not simply a participant or bot connected to the host's organization.

46.    Often, OtterAI will not disclose its presence to others at all. Occasionally, if someone expressly inquires in the chat or asks a question about OtterAI – typically well into the conversation - at which point, OtterAI will post a message in the chat, introduce itself as an "AI assistant" that is helping the designated OtterAI user "take notes for this meeting." It will also include a link to view the "transcript" of the meeting, which prompts non-users to sign up for OtterAI to view, an option that many do not select. Only if they create an account and view the transcript – they learn that their conversations have been recorded.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

47.    If this disclosure is made at all – as OtterAI frequently appears and disappears as a silent participant with no message at all - they often occur at least several minutes after the meeting has already begun, when a non-user meeting participant realizes that they do not recognize a participant entitled "[User's] Notetaker (Otter.ai)," which has silently joined the call. At this point, OtterAI has already been taking screenshots, recording audio, timestamping statements, labeling speakers, analyzing voiceprints, and analyzing the obtained data.

48.    At the same time these disclosures are made, participants are often mid-conversation and do not realize what is happening and do not have time to investigate OtterAI's automated message that only suggests note taking – not recording, transcribing, and storing the entirety of the conversation. Most participants do not use the provided link inconspicuously suggesting it is to follow "notes" while actively engaged in a meeting and unable to create the account, unaware that a bot has been recording their private discussions from the moment it joined.

49.    Not only is the default option *not* to notify non-user meeting attendees that their conversations are being recorded, but the option to notify attendees is only accessible to paid OtterAI users.

50.    Though OtterAI states that it "always recommend[s] getting consent from users before recording and ensuring local laws pertaining to recordings are met," it only offers the option to notify non-user attendees with its "Enterprise plan"—the most expensive plan it offers.[14] Regardless, as discussed above, many users are not aware that the OtterAI is joining *all* of their calls, regardless of whether the user is joining the call.

51.    Thus, OtterAI frequently records and shares private conversations of meeting participants without their knowledge or consent.

---

[14] Otter Help, *Enforce pre-meeting recording notifications*, OTTER.AI (2023), https://help.otter.ai/hc/en-us/articles/13353091821591-Enforce-pre-meeting-recording-notifications.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

52.     OtterAI exploits the private, identifying information and recorded Private Information to send automated emails to non-user attendees, often including transcripts and summaries, to encourage them to sign up for OtterAI's services. Beyond spamming non-users with OtterAI's promotional emails, OtterAI uses the recordings for a variety of its own purposes including – improving their services, training its algorithms/products, processing job applications (if someone were to apply to work for OtterAI), social network support (such as sending messages purportedly on behalf of the users – to social networks), contracting vendors, research, and even sharing the collected data with other third parties such as analytics providers, advertising providers, vendors, social networks and more.

53.     In addition to secretly recording and transcribing non-user participants' voices and statements, OtterAI collects and stores identifying information about these individuals, including their names and email addresses, by extracting data from the OtterAI user's calendar invites and meeting metadata, often without the knowledge or consent of the OtterAI user.

54.     At first, OtterAI emails all invitees to the call after the call is concluded, inviting them to access the notes of the call. These emails are deceptive, appearing simply as shared meeting notes. Non-users who want to access these notes, that appear to have been shared by their colleagues, open the link in their emails to discover that they must sign up for OtterAI to access the notes.

55.     Unfortunately, those individuals who try to access notes and are forced to create an account are often automatically enrolled in the service that allows OtterAI to join the calls that appear on their calendar and initiate the non-consensual recordings. Only if these users create the account can they discover that they had been illegally recorded.

56.     Previously, OtterAI's onboarding process included calendar syncing as a default setting and did not offer users the option to customize what data or permissions would be shared throughout the set-up process. Recently, OtterAI began allowing new users to select calendar preferences at signup, but the default options remained the same- to share the entire calendar and

CLASS ACTION COMPLAINT

contact information of the participants. Even with the new set up, the platform continues to join and record meetings without notifying or obtaining consent from non-user attendees.

57.     As one of the OtterAI's users accurately explained: "[OtterAI's] user acquisition approach is basically to spread like a virus…Most users have no idea [they have granted OtterAI access to their meetings], they're just there for the meeting notes (at the prompting of a trusted colleague/earlier victim."[15] When another user replied that the situation seemed problematic, the original user described OtterAI's software as a "privacy and security nightmare."[16]

58.     OtterAI uses the collected data to continue bombard the participants with commercial emails, enticing them to sign up for its services – without the users' permission, knowledge, or consent. OtterAI uses the users' names to indicate that the email was sent on their behalf -when in reality – it never was. The users don't want to bombard their friends, colleagues, or family with spam; they do not even know the emails are sent on their behalf by OtterAI.

59.     OtterAI's illegal conduct does not stop there. It also trains its AI models on the recordings that it collects from the users and non-users, despite those recordings containing highly personal and private information.

60.     Not only are many OtterAI users are unaware that OtterAI automatically joins their meetings, harvests non-user data, and records their entire conversations (to later train their models, and bombard participants with spam), but most OtterAI subscription plans also do not provide tools to notify or obtain consent from non-users. In effect, OtterAI attempts to shift the legal burden onto its users to get consent – while at the same time stripping away their ability to do so – even when they realize what OtterAI does.

---

[15] u/Neither-State-211, Post titled *Otter.ai rant*, REDDIT (January 2025), https://www.reddit.com/r/sysadmin/comments/1i3rsds/Otter.ai_rant/.

[16] u/Neither-State-211, Comment to *Otter.ai rant*, REDDIT (January 2025), https://www.reddit.com/r/sysadmin/comments/1i3rsds/Otter.ai_rant/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

61.   The OtterAI's "Audio Recording" data, often containing the sensitive personal information of unsuspecting third parties, is stored and processed without obtaining informed consent from non-user participants.

62.   As part of the transcription process, OtterAI not only captures the content of what non-user participants say but also assigns speaker labels and timestamps to identify exactly who spoke and when. Even if a meeting attendee does not have an OtterAI account and has not consented to being recorded, the platform attempts to identify their name and voice through metadata extracted from meeting invitations, linking this information to specific portions of the meeting transcript and even featuring screenshots of the meeting, which can include images of non-user participants' faces.

63.   OtterAI has an incentive to obtain as much data as possible, regardless of consent, because it uses this data for its own commercial benefits, including – as it admits in its fine print - training its proprietary artificial intelligence software, improving its products/services, marketing, and other purposes as discussed above.

64.   However, OtterAI takes, processes, stores, and profits from this data even though it is from individuals who do not use OtterAI and have never agreed to its terms of service or privacy policy. OtterAI thus benefits from obtaining as much data as possible since it uses it to improve its software for its own commercial purposes regardless of source or lack of consent.

65.   OtterAI cannot rely on users' "consent" to justify its surveillance of non-users. Not only is OtterAI aware that many of its users do not realize that it's recording and intercepting all of their calls, but also, OtterAI subscribers have no authority to waive the privacy rights of other meeting participants, nor could they meaningfully obtain informed consent when OtterAI itself conceals the scope of its data practices. Users do not know the full extent of OtterAI's uses of Private Information – such as training AI models or fueling targeted marketing. Consent requires knowledge. The subscribing users lack the full picture, making it impossible for them to secure lawful consent on behalf of anyone else.

**PLAINTIFF'S EXPERIENCE**

66.    In or around March 2025, Plaintiff used Zoom to communicate with a medical professional when OtterAI joined the Zoom meeting and began recording her conversation, transcribing, and storing it without her knowledge, permission, or consent. Plaintiff's discussion with her medical provider was deeply personal and private, and she did not intend to share the confidential discussion with any third parties, including OtterAI.

67.    Plaintiff neither granted nor would have granted OtterAI consent to record her conversation on Zoom if she had been given the opportunity.

68.    Plaintiff did not authorize OtterAI to indefinitely store her private communication or to exploit it for commercial gain.

69.    Plaintiff's private conversation remains on OtterAI's servers, from which OtterAI continues to profit, despite never obtaining Plaintiff's express and informed consent. The intrusion is especially troubling given the sensitive nature of the discussion and Plaintiff's expectation of confidentiality.

**TOLLING**

70.    The statutes of limitations applicable to Class claims were tolled by Defendant's conduct and Plaintiff's and Class Members' delayed discovery of their claims to the time when OtterAI began joining calls online, without users' permission.

71.    As alleged above, Plaintiff and the Class Members did not know, and could not have known, the full extent of Defendant's surreptitious gathering, storage, and monetizing of their private conversations without consent.

72.    Plaintiff and the Class Members could not have discovered, through the exercise of reasonable diligence, the full scope of Defendant's alleged unlawful conduct, as it not only recorded their private conversations and information without consent, but also stored and monetized it in a way that Plaintiff and the Class Members do not have control over. Additionally, on information

15

CLASS ACTION COMPLAINT

and belief, Defendant has already used this information for its commercial advantage by incorporating it into its AI training models.

73.     Defendant did not make clear to Plaintiff and the Class Members the full extent of its recording, storage, and monetization of their conversations, and continues to store and commercially benefit from this information, causing a continuing violation of Plaintiff's and Clas Members' rights.

74.     All applicable statutes of limitations have been tolled by operation of the delayed discovery rule. Under the circumstances, Defendant was under a duty to disclose the nature and significance of the invasion of privacy but did not do so. Defendant is therefore estopped from relying on any statute of limitations.

## **CLASS ALLEGATIONS**

75.     **Class Definition:** Plaintiff brings this action on behalf of herself, and other classes of persons similarly situated, as defined below, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure:

76.     The Nationwide Class that Plaintiff seeks to represent is defined as:

> **Nationwide Class**: 1) All individuals who were recorded by OtterAI, 2) who did not have an account with OtterAI at the time of the recording, 3) at any time within the applicable statute of limitations period(s) and/or while such statutes of limitations were tolled.

77.     The California Subclass that Plaintiff seeks to represent is defined as:

> **California Subclass:** 1) All individuals who are citizens of the State of California, 2) who were recorded by OtterAI, 3) who did not have an account with OtterAI at the time of the recording 4) at any time within the applicable statute of limitations period(s) and/or while such statutes of limitations were tolled.

78.     The Nationwide Class and the California Subclass are referred to collectively as the "Classes." Excluded from the Classes are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officer or director, any

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

successor or assign and any Judge who adjudicates this case, including their staff and immediate family.

79.    Plaintiff reserves the right under Federal Rule of Civil Procedure 23 to amend or modify the Classes to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiff reserves the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

80.    The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

81.    The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

82.    **Numerosity:** The exact number of Class Members is not available to Plaintiff, but it is clear that individual joinder is impracticable. Millions of people throughout the United States, as well as hundreds of thousands in the State Subclass, likely meet the definition of the Class. Class Members can be identified through Defendant's records or by other means.

83.    **Commonality:** Commonality requires that the Class Members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class Members as to whether Defendant had the legal right to record and store their private conversations.

84.    **Typicality:** Plaintiff's claims are typical of the claims of other Class Members in that Plaintiff and the Class Members sustained damages arising out of Defendant's uniform wrongful conduct and practices in recording and storing their private conversations without legal consent.

85.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's claims are made in a representative capacity on behalf of the Class Members. Plaintiff has no interests antagonistic to the interests of the other Class Members. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and

17

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class Members.

86.    **Predominance:** There are many questions of law and fact common to the claims of Plaintiff and Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

a.    Whether OtterAI violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq*.;

b.    Whether OtterAI's acts and practices violated California's Constitution, Art. 1, § 1;

c.    Whether OtterAI's acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*.;

d.    Whether OtterAI's unauthorized interception and collection of Plaintiff's and Class Members' Private Information was willful;

e.    Whether OtterAI was authorized by Plaintiff and Class Members to intercept or collect their Private Information;

f.    Whether OtterAI misrepresented that it would not surreptitiously obtain Plaintiff's and Class Members' communications;

g.    Whether OtterAI was unjustly enriched by obtaining Plaintiff's and Class Members communications for commercial benefit, including but not limited to improving its products or artificial intelligence technology;

h.    Whether OtterAI violated Plaintiff's and Class Members' privacy rights;

i.    Whether OtterAI violated Plaintiff's and Class Members' property rights as they relate to ownership of their personal information;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

CLASS ACTION COMPLAINT

  j. Whether Plaintiff and Class Members are entitled to actual damages, enhanced damages, punitive damages, statutory damages, or other monetary remedies provided by equity and law;

  k. Whether injunctive and declaratory relief, restitution, disgorgement, and other equitable relief is warranted.

87. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class Members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by OtterAI's actions. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief from OtterAI's misconduct. Even if Class Members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

## CHOICE OF LAW

88. OtterAI is headquartered in Mountain View, California, making California the epicenter of this case. Indeed, it is in California where OtterAI's high-level employees and officers direct, control, and coordinate the corporation's activities, including its software development and implementation as well as major policy, financial, and legal decisions.

89. The wrongdoing at the heart of this lawsuit emanated from Defendant's California headquarters, where OtterAI employees and executives create, operate, and make the legal and

CLASS ACTION COMPLAINT

technical decisions at issue in this case.

90.    OtterAI elected to have California govern all claims and disputes arising out of its products and services that are the subject of this lawsuit.

91.    Specifically, OtterAI's Terms of Service § 20.2- Governing Law, provides in relevant part: "These Terms are governed by the laws of the State of California without regard to conflict of law principles."

92.    Even though Plaintiff did not submit to the Terms of Service, as she was not an OtterAI user at the time it surreptitiously obtained, recorded, and stored her information, Defendant has submitted to allowing California law to apply to all claims.

93.    Additionally, California has a significant interest in regulating the conduct of businesses operating within its borders. California has a particular interest in protecting the rights of Californians and of residents and citizens across the nation from harmful and unlawful conduct emanating from a company headquartered and doing business in California.

94.    For all of these reasons, the application of California law to all of the Class Members' claims is fair and appropriate.

95.    Under California's choice of law principles, which are applicable to this action, the common law of California applies to the common law claims of all class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's consumer protection laws may be applied to nonresident Class members.

## COUNT ONE
## VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")
## 18 U.S.C. § 2511(1), et seq.
## Unauthorized Interception, Use, and Disclosure
## (On behalf Plaintiff and the Nationwide Class)

96.    Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

97.    The ECPA protects both sending and receipt of communications.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

98.    18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

99.    Electronic Communications are "transfer[s] of signs, signals, writing, . . . data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

100.    The transmission of Plaintiff's audio communication qualifies as "communications" under the ECPA's definition of 18 U.S.C. § 2510(12) because they involve communication between Plaintiff's and third parties. Plaintiff and Class Members did not invite OtterAI to record their conversations and did not knowingly consent to OtterAI keeping, and profiting off of, their private communications.

101.    The ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

102.    The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

103.    The ECPA defines "electronic, mechanical, or other device" as "any device . . . which can be used to intercept a[n] . . . electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5). OtterAI uses its own electronic tools – OtterAI software -  to intercept virtual meetings, Plaintiff's and Class Members online conversations occurring on their cell phones, computer devices, and other devices. It is transmitting the recorded audio and transcribed notes to its own web-servers, in real time.

104.    By entering private online meetings to record and then store those communications without consent from all parties, OtterAI intentionally intercepted and endeavored to intercept the

21

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

confidential electronic communications of Plaintiff and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

105.    Specifically, OtterAI intercepted Plaintiff's and Class Members' electronic audio and communications, screenshots of live participants, and related metadata – Private Information - via its software, to record, store, and unlawfully misuse Plaintiff's and Class Members' Private Information for its own commercial purposes.

106.    OtterAI violated 18 U.S.C. § 2511(1)(d) by intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiff and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a).

107.    OtterAI intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, invasion of privacy, among others.

108.    OtterAI did not obtain express and informed consent from any participant on the calls. OtterAI's users do not, and cannot, consent to OtterAI recording of the entirety of conversations, including the conversations on which they themselves are not even present. As many users have reported due to misleading nature of OtterAI's sign up process and set up – they never wanted OtterAI to join and record the conversations in the first place. Many users experienced shock and embarrassment when they learned that OtterAI is joining and recording the entirety of conversations after it gained access to calendar. Many users also complained that after discovering that OtterAI records conversations, they attempted to disable the auto-joining feature, after which OtterAI continued to join and record the calls.

109.    OtterAI's true purpose of intercepting and transcribing the private communications is committing a tort – invasion of privacy and misappropriation of data. It collects information from

the calls and the calendar it gains access to, to then bombard the non-users with spam about its services. OtterAI has also received many complaints notifying them the users did not expect for the OtterAI bot to join all of their calls and record the entire conversations – and thus it is aware that both users and non-users do not expect for OtterAI to join the calls and begin a recording.

110.    OtterAI was not an intended party to the communications based on its software joining meetings and recording and transferring these communications without express authorization from Plaintiff and the Class Members.

111.    OtterAI's acquisition of Plaintiff's and Class Members' communications that were unlawfully intercepted was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States nationwide.

112.    Plaintiff and Class Members have suffered damages as a direct and proximate result of OtterAI's invasion of privacy when they learned that OtterAI intruded upon, intercepted, transmitted, and used their Private Information for commercial purposes.

113.    OtterAI received substantial financial benefits from their use of Plaintiff's and the Class Members' private communications without providing any value or benefit to Plaintiff or the Class Members, since OtterAI used unlawfully acquired data to improve their products, thus increasing their revenue and giving itself an unfair commercial advantage.

114.    Plaintiff and Class Members suffered a diminution in value of their Private Information and the loss of privacy due to OtterAI secretly obtaining private communications that OtterAI was not an intended party to, and that Plaintiff and Class Members intended for their conversations to remain private.

115.    OtterAI intentionally used the wire or electronic communications to increase their profit margins. Defendant specifically used the Otter Assistant to obtain audio communications as well as other private data to use for financial gain and to improve their artificial intelligence technology.

116.   OtterAI was not acting under color of law to intercept Plaintiff's and the Class Members' wire or electronic communication.

117.   Plaintiff and Class Members did not authorize OtterAI to acquire the content of their communications for purposes of invading their privacy.

118.   Meeting hosts also did not consent to OtterAI's recording, transcription or transmission of their private recordings and OtterAI failed to provide proper notice to the meeting hosts and other parties who were being recorded.

119.   Any purported consent that OtterAI received from Plaintiff and Class Members was not valid as it was not knowingly and intentionally given.

120.   As a result of OtterAI's violation of the ECPA, Plaintiff and the Class are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable and declaratory relief requiring OtterAI to cease these practices and delete the unlawfully gathered information, compensatory and punitive damages, and attorney's fees and costs.

121.   The declaratory and injunctive relief sought in this case includes, but is not limited to:

a.   Entering a declaratory judgment against OtterAI —declaring that OtterAI's interception of Plaintiff's and Class Members' private communications is in violation of the law;

b.   Entering an injunction against OtterAI:

i.   Prohibiting OtterAI from intercepting Plaintiff's and Class Members' Private Information and requiring the unlawfully gathered information be destroyed;

ii.   Requiring OtterAI to alert and/or otherwise notify all users of what information is, or was, collected, used, stored, and shared;

iii. Requiring OtterAI to obtain express consent from all parties to a communication before it records, stores, transmits, shares, processes, or otherwise uses any private communications or information;

iv. Requiring OtterAI to delete all illegally obtained conversations;

v. Requiring OtterAI to provide clear disclosure of their practices concerning collection of private communications and information from both its users and from third parties, as well as uses of such data; and,

vi. Requiring that OtterAI permanently cease its unlawful collection of private communications and information.

## COUNT TWO
## INVASION OF PRIVACY
### (On behalf Plaintiff and the Nationwide Class)

122. Plaintiff herein repeats, realleges, and fully incorporates the prior paragraphs as if fully stated herein.

123. Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in their private communications.

124. OtterAI intentionally intercepted and collected Plaintiff's and Class Members' Private Information for its own financial advantage.

125. By intentionally intercepting and collecting Plaintiff's and Class Members' Private Information, OtterAI unlawfully invaded their privacy by, among others: (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) surreptitiously obtaining and using Plaintiff's and Class Members' private communications; and (iii) enabling and facilitating the disclosure of Plaintiff's and Class Members' Private Information without authorization or consent.

126. OtterAI knew, or acted with reckless disregard, of the fact that a reasonable person in Plaintiff's and Class Members' position would consider their actions highly offensive.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

127.   OtterAI's unauthorized surreptitious recording, monitoring, and processing of Plaintiff's and Class Members conversations violated expectations of privacy that have been established by social norms.

128.   As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted and caused damages to Plaintiff and Class Members.

129.   Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of OtterAI's conduct, directed at injuring Plaintiff and Class Members in conscious disregard of their rights.

130.   Plaintiff seeks injunctive relief on behalf of the Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until OtterAI is enjoined, and restrained by order of this Court, Plaintiff has no way of controlling her own information and ensuring that her private sessions, and communications remain private or the recordings, screenshots, and transcripts in OtterAI's possession are destroyed. Without injunctive and declaratory relief, OtterAI will continue profiting from its illegally obtained data, and Plaintiff and Class Members are at a heightened risk of this information being shared or stolen. Thus, OtterAI's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members, through its continued storage and use of the unlawfully collected information. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

**COUNT THREE**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

131.   Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

132.   Through its unlawful, unfair and deceptive conduct, OtterAI knowingly obtained significant revenue from its unlawful collection and use of Plaintiff's and Class Members' Private Information by using and processing their Private Information for commercial gain, including improving its products.

133.   By absconding and misusing Plaintiff's and Class Members' Private Information, OtterAI was unjustly enriched and received both financial and non-financial benefits. For example, OtterAI exploits the illegally obtained conversations for its own commercial advantage such as training its proprietary software, improving its services, contracting with service vendors, and more.

134.   OtterAI enriched itself by saving the costs it reasonably should have spent by obtaining users consent to record and use their private communications. Yet, to increase profits, and at the expense of Plaintiff and the Class, it gained a competitive and financial advantage by failing to obtain proper consent to record and use this information. Due to OtterAI's conduct, Plaintiff and Class Members suffered harm, including from privacy invasion, loss of compensation/value for their data, and the lost profits from the use of their Private Information.

135.   It would be inequitable and unjust to permit OtterAI to retain the enormous economic benefits (financial and otherwise) it has obtained from and/or at the expense of Plaintiff and Class Members.

136.   OtterAI will be unjustly enriched if it is permitted to retain the economic benefits conferred upon it by Plaintiff and Class Members through its obtaining of Private Information and the value thereof, and profiting from the unlawful, unauthorized, and impermissible use of this Private Information.

137.   Plaintiff and Class Members are therefore entitled to recover the amounts realized by OtterAI at their expense.

138.   Since Plaintiff and the Class Members have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to

1    recover the amount of OtterAI's ill-gotten gains, and/or other sums as may be just and equitable. In

2    the absence of completed discovery regarding class certification and merits, forcing an election of

3    remedies at the initial pleading stage is premature.

4                                    **COUNT FOUR**
                              **DECLARATORY JUDGMENT**
5                             **28 U.S.C. § 2201, et. seq.**
                   **(On behalf of Plaintiff and the Nationwide Class)**
6

7        139.   Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully

8    stated herein.

9        140.   The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., authorizes this Court to

10   enter a judgment declaring the rights and legal relations of the parties and grant further necessary

11   relief.

12       141.   Furthermore, the Court has broad authority to restrain acts, such as here, that are

13   tortious and violate the terms of the statutes described in this Complaint.

14

15       142.   An actual controversy has arisen as to whether OtterAI unlawfully collected certain

16   information from Plaintiff and the Class Members, and how OtterAI continues to use that

17   information for its own financial gain, as well as whether OtterAI shares that information with third

18   parties.

19       143.   Plaintiff and the Class Members are entitled to equitable relief as no adequate remedy

20   at law exists.

21

22            a.   Defendant has not yet implemented adequate protections to protect Plaintiff and

23                 Class Members' Private Information or conversations, nor has it given adequate

24                 notice to all affected class members, leaving individuals potentially unsure if

25                 their conversations have been recorded and kept by OtterAI. Therefore, the

26                 equitable relief requested here would prevent ongoing and future harm to Plaintiff

27                 and the Class Members. Since Defendant still has Plaintiff's and Class Members'

28

**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

information, without an injunction, Plaintiff and the Class Members cannot be sure that the information is secure and private or properly destroyed.

b.  Injunctive relief is also necessary to protect members of general public from Defendant's unlawful recording and storage of private conversations. Without court intervention, Defendant will likely continue its privacy violations.

c.  While Defendant has disclosed what it may use Plaintiff's and Class Members private conversations and information for, it is not currently known specifically what information is being kept, how it is being used, and when, if ever, it will be destroyed. Therefore, injunctive relief would ensure and provide Plaintiff and the public with ability to control access to their information, and limit its exposure.

d.  In addition, discovery—which has not yet been provided—may reveal that the claims providing legal remedies are inadequate. At this time, in the absence of completed discovery regarding class certification and merits, forcing an election of remedies at the initial pleadings stage is premature and likely to lead to subsequent, potentially belated, and hotly contested motions to amend the pleadings to add equitable remedies based on a lengthy historical recount of discovery and analysis of voluminous exhibits, transcripts, discovery responses, document productions, etc., as well as related motions to seal confidential information contained therein.

144.  Plaintiff and the Class Members therefore seek a declaration that OtterAI violated their privacy and property rights, and OtterAI must take remedial measures, including, but not limited to:

a.  Prohibiting it from engaging in the wrongful acts stated herein;

b.  Requiring it to implement adequate security and privacy protocols and practices consistent with industry standards, applicable regulations, and federal, state, and

29

local laws;

c.  Mandating that proper notice be sent to all affected parties, and posted publicly;

d.  Requiring that it delete, destroy, and purge Plaintiff's and Class Members'
    unlawfully obtained Private Information;

e.  Requiring it to engage independent third-party auditors and/or internal personnel
    to ensure all unlawfully obtained information is permanently deleted and purged
    from its system; and,

f.  Requiring all further and just corrective action, consistent with permissible law
    and pursuant to only those causes of action so permitted.

## COUNT FIVE
## VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA")
## CAL. PENAL CODE § 631
## (On behalf of the Nationwide Class, or in the alternative, the California Subclass)

145.    Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

146.    Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, the California Subclass as defined above.

147.    OtterAI is a person for purposes of Cal. Penal Code § 631.

148.    CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does *any* of the following:

(1) "intentionally taps, or makes any unauthorized connection…with any
telegraph or telephone wire, line, cable, or instrument, including the wire, line,
cable, or instrument of any internal telephonic communication system,"

(2) "willfully and without the consent of all parties to the communication, or

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within [the state of California],"

(3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or,

(4) aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section"

149. Here, OtterAI violated sections (2) and (3) above because it read and learned the content of messages without authorization and used that information for its own commercial purposes.

150. OtterAI uses its Otter Assistant technology, a "machine, instrument," under ECPA to engage in the prohibited conduct at issue here.

151. At all relevant times, OtterAI intentionally intercepted and otherwise read, attempted to read, and learn the contents and meanings of Plaintiff's and Class Members' Private Information (i.e. messages/communications) without their consent. OtterAI did this knowingly and surreptitiously in order to collect tremendous data, to promote itself to non-users, and use the data it held to improve its artificial intelligence technology which provided it with additional commercial benefits. OtterAI has the capability of using the collected recordings and transcripts for its own purposes and admits using collected information to "improve" its services, marketing purposes, such as developing and providing promotional and advertising materials, job applications, internal research for technological development and demonstration, and more. OtterAI also shares certain information with other third parties such as advertising technology companies, analytics providers, vendors, and others.

CLASS ACTION COMPLAINT

152.   At all relevant times, by using the Otter Assistant to record in real time and transmit private communications, OtterAI willfully and without the consent of Plaintiff and Class Members, read or attempted to learn the contents or meaning of their electronic communications through its software. This occurred while the electronic communications were in transit or passing over any wire, line, or cable, or were being sent from or received at any place within California. OtterAI intercepted Plaintiff's and Class Members' communications without their authorization or consent.

153.   OtterAI employed a device to wiretap private communications for its own commercial benefit.

154.   Plaintiff and the Class Members did not consent to the interception, reading, learning, recording, and collection of their electronic communications with third-party websites. Accordingly, the interception was unlawful and tortious.

155.   OtterAI used, or attempted to use, the information unlawfully gathered for its own commercial purposes through using the data to train its artificial intelligence systems and speech recognition software. OtterAI also communicated this unlawfully gathered data to other third parties such as advertising technology companies, analytics providers, vendors, and others.

156.   The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

157.   Unless enjoined, OtterAI will continue to commit the illegal acts alleged here, including the continued use and exploitation of Plaintiff's and Class Members' data that was unlawfully intercepted.

158.   Plaintiff and the Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

**COUNT SIX**
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA")**
**CAL. PENAL CODE § 635**
**(On behalf of the Nationwide Class, or in the alternative, the California Subclass)**

159.   Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

160.   Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, the California Subclass as defined above.

161.   CIPA § 635 makes punishable anyone "who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another[.]" Cal. Penal Code § 635.

162.   OtterAI's Otter Assistant is a "device" which is "designed or intended for eavesdropping upon the communication of another."

163.   Injuries caused using Otter Assistant are traceable to OtterAI's furnishing and provision of the device.

164.   Plaintiff and Class Members are entitled to bring a CIPA § 635 claim per CIPA § 637.2. The court in *In re Meta Pixel Tax Filing Cases* noted that "[b]y including Section 635 within the provisions enforceable under Section 637.2 [] the California Legislature clearly intended to permit private enforcement[.]" 724 F. Supp. 3d 987, 1009 (N.D. Cal. 2024).

165.   Plaintiff and the Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

**COUNT SEVEN**
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA")**
**CAL. PENAL CODE § 638.51**
**(On behalf of the Nationwide Class, or in the alternative, the California Subclass)**

166.   Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

167.    Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, the California Subclass as defined above.

168.    CIPA § 638.51 provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order[.]" Cal. Penal Code § 638.51.

169.    A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

170.    A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

171.    Courts interpret "trap and trace device" and "pen register" broadly. The court in *Greenley v. Kochava, Inc*. noted Section 638.50's "expansive language" and explained that this "indicates courts should focus less on the form of the data collector and more on the result." 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). *See also Rodriguez v. Autotrader.com, Inc*., 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025) (rejecting defendant's suggestion that Section 638.51 applies only to telephone surveillance, not software: "the definitions supplied by § 638.51 are not so limited").

172.    OtterAI violated Section 638.51 by using software to record private communications without consent and then transfer it for its own use.

173.    OtterAI did not obtain a court order to use the Otter Assistant to record private communications.

174.    Plaintiff and the Class Members did not consent to the use of a pen register or trap and trace device.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

175.   Plaintiff and the Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT EIGHT
## INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION, ART. I, § 1.
### (On behalf of the Nationwide Class, or in the alternative, the California Subclass)

176.   Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

177.   Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, the California Subclass as defined above.

178.   Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I, § 1.

179.   The right to privacy in California's Constitution creates a private right of action against private and government entities.

180.   Plaintiff and Class Members have and continue to have a reasonable expectation of privacy and interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications; and (2) being able to communicate without observation, intrusion or interference.

181.   At all relevant times, by using the Otter Assistant to record and communicate Plaintiff's and Class Members' private communications, OtterAI invaded their privacy rights under the California Constitution.

182.   Plaintiff and Class Members had a reasonable expectation that their communications would remain confidential, and that OtterAI would not secretly record their private conversations and then use them for their own commercial benefit, as well as share them with third parties.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

183.    This invasion of privacy is serious in nature, scope, and impact because it relates to communications that Plaintiff and the Class Members intended to keep private. Moreover, it constitutes an egregious breach of the societal norms underlying privacy rights.

184.    As a result of OtterAI's actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

185.    Plaintiff and Class Members have been harmed as a direct and proximate result of OtterAI's invasion of their privacy and are entitled to injunctive relief.

186.    Plaintiff and the Class Members seek all other relief as the Court may deem just, proper, and available for invasion of privacy under the California Constitution.

**COUNT NINE**
**LARCENY/RECEIPT OF STOLEN PROPERTY**
**VIOLATION OF CALIFORNIA PENAL CODE § 496(a) and (c)**
**(On behalf of the Nationwide Class, or in the alternative, the California Subclass)**

187.    Plaintiff herein repeats, realleges, and fully incorporates all prior paragraphs as if fully stated herein.

188.    Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, the California Subclass as defined above.

189.    Courts recognize that internet users have a property interest in their personal information and data. *See Calhoun v. Google, LLC,* 526 F. Supp. 3d 605, at *21 (N.D. Cal. Mar. 17, 2021) (recognizing property interest in personal information and rejecting Google's argument that "the personal information that Google allegedly stole is not property"); *In re Experian Data Breach Litigation,* 2016 U.S. Dist. LEXIS 184500, at *5 (C.D. Cal. Dec. 29, 2016) (loss of value of PII is a viable damages theory); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("The growing trend across courts that have considered this issue is to recognize the lost property value of this [personal] information."); *Simona Opris v. Sincera,* 2022 U.S. Dist. LEXIS 94192, at *20 (E.D. Pa. 2022) (collecting cases).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

190.   Cal. Penal Code § 496(c) permits any person who has been injured by a violation of section 496(a) to recover three times the amount of actual damages, costs of suit and attorney's fees in a civil suit.

191.   Penal Code § 496(a) creates an action against any person who (1) receives any property that has been stolen or obtained in any manner constituting theft, knowing the property to be stolen or obtained, or (2) conceals, sells, withholds, or aids in concealing or withholding any property from the owner, knowing the property to be so stolen or illegally obtained.

192.   Under Penal Code § 1.07(a)(38), "person" means "an individual, corporation, or association." Thus, OtterAI is a person under § 496(a).

193.   As set forth herein, the Plaintiff's and Class Members' Private Information was stolen or obtained by theft, without limitation, under Penal Code § 484, by false or fraudulent representations or pretenses. At no point did OtterAI have Plaintiff's and Class Members' consent to record and process their private communications.

194.   OtterAI meets the grounds for liability of § 496(a) because it received information that was stolen or obtained by theft and/or false pretenses, and which it knew was obtained illegally when it received it.

195.   As a direct and proximate result of the acts and omissions described above, Plaintiff and the Class Members were injured by OtterAI's violations of section 496(a).

196.   Pursuant to California Penal Code § 496(c), Plaintiff and the Class Members seek actual damages, treble damages, costs of suit, reasonable attorneys' fees, and any other damages that are authorized by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the Proposed Classes defined herein, respectfully requests:

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

A.   That this Action be maintained as a Class Action, that Plaintiff be named as Representative of the Class, that the undersigned be named as Lead Class Counsel of the Class, and that notice of this Action be given to Class Members;

B.   That the Court award Plaintiff and Class Members damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

C.   That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendant to which Plaintiff and the Class are entitled, including but not limited to restitution;

D.   Plaintiff and the Class be awarded with pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

E.   Plaintiff and the Class be awarded with the reasonable attorneys' fees and costs of suit incurred by their attorneys;

F.   Plaintiff and the Class be awarded with treble and/or punitive damages insofar as they are allowed by applicable laws; and

G.   Any and all other such relief as the Court may deem just and proper under the circumstances.

## **JURY TRIAL DEMANDED**

197.   Plaintiff demands a jury trial on all triable issues.

**CLARKSON LAW FIRM, P.C.**

By: */s/ Yana Hart*
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Bryan Thompson (SBN 354683)
*bthompson@clarksonlawfirm.com*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com